IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

*ELECTRONICALLY FILED*

**Loandria Dahmer,**                                   CASE NO. __1:18-cv-124-GNS____

                    Plaintiff,

                                                       **VERIFIED COMPLAINT FOR**
                                                       **DAMAGES AND**
                                                       **DEMAND FOR JURY TRIAL**


v.

**Western Kentucky University,**
**Timothy Caboni,**
**Andrea Anderson,**
**and**
**Charley Pride**

                    Defendants.

_____

     Comes the Plaintiff, Loandria "Andi" Dahmer (hereinafter "Ms. Dahmer" or "Plaintiff"),

by counsel, and for her Complaint against the Defendants Western Kentucky University, Timothy

Caboni, Andrea Anderson and Charley Pride, states herein as follows:

## INTRODUCTION

1.     This is an action involving claims under Title IX of the Education Amendments of 1972,

20 U.S.C. §§ 1681-1688 (hereinafter "Title IX"), 42 U.S.C. § 1983 and various state law causes

of action.  The plaintiff, Andi Dahmer, was subjected to verbal, mental and emotional abuse as a

result of the tortious conduct of the Defendants including discrimination on the basis of sex.

## PARTIES, JURISDICTION AND VENUE

2.      Ms. Dahmer is a citizen of the Commonwealth of Kentucky, who currently resides in Jefferson County, Kentucky.

3.      Defendant Western Kentucky University (hereinafter "WKU") is a public university duly organized and doing business in Kentucky.

4.      Defendant Timothy Caboni is the President of WKU and an individual domiciled in Kentucky.  Mr. Caboni is a defendant in his individual capacity.

5.      Defendant Andrea Anderson is the Title IX Coordinator of WKU and an individual domiciled in Kentucky.  Ms. Anderson is a defendant in her individual capacity.

6.      Defendant Charley Pride is the Director of Student Activities, Organizations and Leadership at WKU and an individual domiciled in Kentucky.  Mr. Pride is a defendant in his individual capacity.

7.      Defendant WKU receives federal funding and financial assistance within the meaning of 20 U.S.C. §§ 1681 (a) and is otherwise subject to Title IX.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S. §§ 1331 and 1343.

9.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

10.     Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-1688, 42 U.S.C. § 1983, as more fully set forth herein, as well as state law claims.

11.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law claims because they "form part of the same case or controversy."

12.     Personal jurisdiction exists over the Defendants because each have sufficient minimum contacts with Kentucky and with this District as a result of their residence in Kentucky and within this District, and alternatively, because all of the claims alleged in this Complaint arise from their actions occurring within Kentucky and this District.

13.     The amount in controversy exceeds the minimum jurisdictional limits of this Court exclusive of interest and costs.

14.     Venue is proper in the Bowling Green Division of the U.S. District Court in the Western District of Kentucky pursuant to 28 U.S.C.§ 1391(b)(1) and (2) because, *inter alia*, upon information and belief, the Defendants reside and work in the Bowling Green Division in the Western District of Kentucky and are subject to this Court's personal jurisdiction.

15.     All conditions precedent to the maintenance of this suit and Plaintiff's claims have occurred or been affirmed.

## General Allegations

### A.  Western Kentucky University

16.  WKU is a fully-accredited, public school located in Bowling Green, Kentucky.  Defendant WKU describes itself as a campus that embraces diversity and inclusion, as on its website, WKU states "embedded in the Western Kentucky University mission is a commitment to diversity, equity

and inclusion" and asserts its adherence to "celebrating and embracing diversity" as part of the Western Creed.

17.    Defendant WKU has a published "Discrimination and Harassment Policy" which asserts that harassing behaviors will not be tolerated toward any member of the community and that the school is committed to non-discrimination:

> B. Western Kentucky University is committed to providing a working and learning environment that is free from discrimination and harassment. Discrimination and harassment, and/or retaliation against anyone who makes a complaint or participates in the complaint process are prohibited and shall not be tolerated.

Source:  WKU Discrimination and Harassment Policy, attached as Exhibit A.

18.    Additionally, Defendant WKU considers a hostile work environment (which encompasses students' learning environments) to be the following:

> D. Hostile Work Environment:  Actions or behavior which discriminate against a member of a protected classification (i.e., sex, race, color, ethnic origin, national origin, creed, religion, political belief, sexual orientation, gender identity/expression, marital status, age, uniform service, veteran status, or physical or mental disability), and are severe and pervasive to the extent that the actions or behavior interfere with an employee's ability to perform his or her job or interfere with a student's access to educational opportunities.

Source:  WKU Discrimination and Harassment Policy, attached as Exhibit A.

**B.    Andi is accepted to and enrolls at WKU and is elected Student Government Association President and begins to suffer from a hostile educational environment**

19.    Plaintiff Andi Dahmer is a young, female student who entered WKU as a nineteen-year-old freshman.  As a high school student, Andi excelled and continued to excel in her studies at WKU.  Currently, Andi is majoring in Economics, International Affairs, Spanish and Asian Religions and Cultures and is enrolled in the Mahurin Honors College at WKU.  Andi is a student of both Mandarin Chinese and Spanish and has studied abroad in seven countries while at WKU.

Additionally, she is writing her thesis on the diplomatic recognition of Taiwan as it relates to Central America and has co-published four articles related to East Asian studies with her mentor at WKU.   Andi is also the first Harry S. Truman scholar from WKU, as WKU proudly boasts on its website:

# Scholars

Each year, WKU students earn prestigious academic scholarships and national recognitions. Some of these recognitions include the Harry S. Truman Scholar, Thomas R. Pickering Foreign Affairs Fellowship, Charles B. Rangel Scholars, Fulbright U.S. Student Program, Critical Language Scholarship, David M. Boren Scholarship, and National Science Foundation Graduate Research Fellowship.

Source: https://www.wku.edu/about/, last accessed 8/30/18.

20.     In the spring of 2017, Andi ran as the Student Government Association (hereinafter "SGA") President and was elected by her peers.

**C.     Andi begins suffering sexual harassment and threats at the hands of WKU students in her tenure as SGA President**

21.     Andi began her tenure as WKU SGA President in the fall semester of 2017, on a platform of diversity, equity and inclusion.   However, she would soon endure physical threats as well as sex-based discrimination and harassment at the hands of WKU students and due to the failure of Defendants to reasonably respond and intervene.

22.     One of the first administrators Andi encountered at WKU as SGA President was Charley Pride, who is the Director of Student Activities, Organizations and Leaderships and advisor to the SGA.   Of importance to note, Defendant Pride is a WKU alumni and was a member of the Phi Delta Theta fraternity while at WKU.   The majority of the perpetrators who threatened Andi and created a sexually hostile environment in SGA were also members of the Phi Delta Theta fraternity.

A timeline of the discrimination Andi would begin to endure is described below, however this list is not exhaustive.

23.    On August 31st, 2017 Andi received an email from Pride asking to meet.  During the meeting, Pride made derogatory comments to Andi and essentially berated her for 45 minutes.

24.    On September 10th, 2017, Andi met with an SGA member regarding his sexual groping of a fellow WKU Judicial Council member, who agreed to voluntarily resign from SGA.  It is believed Defendant Pride was aware of this groping, yet failed to report it to Title IX, despite being a mandatory reporter.  A mandatory reporter is someone who is required to report instances of possible sexual misconduct.

25.    On September 22nd, 2017, after escalating, sexually discriminatory behavior in the SGA Senate from Phi Delta Theta members, Andi met with Melanie Evans in the Title IX/Student Conduct Office and asked Ms. Evans to speak to SGA members about what constituted a Title IX violation.  Ms. Evans spoke the following month, however the behavior in the Senate did not change and continued.

26.    On October 17th, 2017, fellow SGA members made racist, xenophobic and anti-Hispanic comments when debating against a resolution to support DACA students on campus.  Andi acknowledged their behavior was anti-immigrant and xenophobic in nature and at that point, these select SGA members became irate.  They then attended the SGA Executive meeting in an attempt to frustrate and intimidate Andi.

27.    During the week of October 23rd, 2017, Charley Pride forced Andi to have an additional meeting to discuss her "intentions towards the Phi Delts", called her a "social justice warrior".  As an SGA President who prided herself on created a student government that emphasized diversity and inclusion of its student body, this surprised Andi to be called a "social justice warrior".  Andi

then described having another additional "chat" in Defendant Pride's office that was hostile.  In fact, Andi described numerous instances where she talked with Defendant Pride and felt intimidated and unsafe and this sentiment was shared by other members of SGA.

28.     On October 7th, 2017, it is believed a fellow SGA member plagiarized a bill written by Andi.  This SGA member would be one of the SGA members with whom Andi would have frequent issues.  Andi referenced the similarity of the two bills in front of the SGA, this SGA member then stormed into the SGA Executive meeting and called Andi a liar and proceeded to scream at her.  Everyone witnessed this hostile behavior and Andi asked him to leave.

**D.     The threatening behavior escalates, including death threats to Andi**

29.     Beginning in January of 2018, Andi then faced a barrage of menacing and dangerous threats from her peers.

30.     On January 29th, 2018, after increasingly hostile behavior from various SGA members, Andi decided to start recording conversations.  As previous conversations had involved these select SGA members cursing at and berating her.  One member told Andi she was "shitty" and was "taking this way too far".  Later at a Judicial Council meeting, this same SGA member became angry and threw papers in the air telling everyone they were "fucking irrelevant" and to "go fuck themselves".

31.     On February 7th, 2018, Andi received an anonymous message of a string of GroupMe messages from a group of SGA students who called themselves the "Justice Friends" who sent messages amongst themselves, stating the following about Andi:

- "Passive aggressive bitch"
- "I could punch that bitch and her lawyer in the face"
- "I hope she gets cancer and catches on fire"
- "Could she be any more (sic) of a cunt like god damn"

Undoubtedly, the use of the words "bitch" and "cunt" were gender-based insults.

32.     Around noon on February 9th, 2018, Andi then reported this to WKU administrators in the Downing Student Union and her concerns with Charley Pride and the behavior of the various students.  It is believed these people reported to Title IX.

33.     Around 7:00 PM that day, Andi then found a note on a Chick-Fil-A receipt on her car that stated, "Go Fuck Yourself".  Andi became increasingly terrified and fearful for her life and reported this to a campus policeman (who was affiliated with Phi Delta Theta) and he attempted to report the incident only to Charley Pride and not to the Office of Student Conduct stating that "they" can "handle it in house".

34.     Andi insisted this be reported to Michael Crowe who was the Director of Student Conduct at WKU.  Andi, deeply disturbed, also reported this to Brenna Andring, who is her residence hall director.

35.     Andi then slept at friends' apartments over the weekend and throughout the next few weeks because she was so fearful for her safety.

36.  Despite her reports and concerns to WKU administrators, Andi had continued to feel Charley Pride was not doing an adequate job of preventing and remedying the hostile environment in which SGA was being run and she reported this to Joshua Hayes, who is a Deputy Title IX administrator at WKU.  Mr. Hayes expressed concerns about ongoing issues with Mr. Pride regarding sexist and racist comments.

37.     Andi then met with the Title IX office on February 13th, 2018 wherein she was discouraged from recording the conversation.  Additionally, the Title IX office later refused to provide her a tape of this meeting and asked her to state in multiple ways her intentions toward WKU and her reasons for seeking legal counsel.  It is important to note, during this meeting the Title IX office asked her multiple times what she had done to cause this behavior.

38.     Around February 23rd, 2018, a "No Contact Order" was processed between a certain SGA member and another student, however, this SGA member was still able to come to SGA meetings and spend time in the outer office with Charley Pride.

39.     For the remainder of February, Andi became increasingly fearful for her safety and would stay on friends' couches, alternating between staying in the dorm as she recalled receiving random knocks on her dorm door.  At another point, a truck with a Phi Delta sticker revved its engine at Andi while she was in a parking lot, as if to indicate the driver was going to run over Andi.  Andi reported what was going on with her teachers and always walked with friends and policeman to class.

40.     Andi then had many instances where she felt so unsafe on campus that her parents would have to come visit her.  This happened on at least 14 different occasions.

41.     At one point, Andi and her parents addressed her concerns to campus police headquarters that while she was being offered a police escort to ensure she felt safe going to her classes, that sometimes took a minimum of 30 to 45 minutes for someone to show up.  Andi expressed this lapse of time made her feel vulnerable and was also making her late for class.  Therefore, the police escort was causing Andi to be late for class and therefore miss out on educational opportunities.

42.     On February 27th, 2018, Andi met with Defendant Caboni to discuss SGA legislation and she revealed to him the harassment she had experienced.  Defendant Caboni expressed the need for a private follow-up conversation, however he did not follow up even after Andi reached out to both him and his secretary.

43.     Going into March of 2018, Andi continued to face harassment from the "Justice Friends" as they claimed she cyber-hacked a phone to obtain the GroupMe messages. On March 4th, 2018, Andi's parents sent an email to Defendant Caboni and his secretary, Julia McDonald, and reached

out to the President of the Council of Postsecondary Education of the State of Kentucky in efforts to get some sort of adequate protections and actions put in place.

44.     On Monday, March 5th, 2018, Andi had a private meeting with Defendant Caboni wherein he asked (again) for the tape from Title IX meeting that took place on February 13th, 2018 on Andi's behalf.  Defendant Caboni assured Andi that WKU was doing all that it could to help her.

45.     Additionally, in this meeting, Defendant Caboni was surprised to learn that Andi had received no messages or updates from the Title IX investigation for multiple weeks.  After this meeting, Andi still had safety concerns.

46.     On March 8th, 2018, Andi was informed by Title IX that the case did not fall under Title IX but rather fell under the Student Code of Conduct and was told Charley Pride would likely be removed as the advisor for the SGA.

47.     At a subsequent SGA meeting, on March 20th, 2018, Pride did not enter the SGA meeting but paced outside it the entirety of the meeting.

48.     Andi continued to feel unsafe throughout the rest of the spring 2018 semester, having fears that students may physically assault her or try to retaliate against her.  She did not feel freedom to move about campus and perform her duties as SGA president, explaining that she was advised not to be in the SGA office after 5:00 PM at night.

49.     Andi shared her story with the student newspaper and the local news, who published articles outlining her struggles with Title IX and her fearing for her life while on campus.  These articles, providing more details in relation to Andi's experiences with Defendants, are attached was Exhibits B, C, and D.  Since Andi's story came out, numerous other students approached her and also complained about their experiences with Title IX at WKU.

**E.      A pervasive atmosphere of hostility and sex discrimination in SGA at WKU**

50.      Many of Andi's peers in SGA have also expressed the pervasive environment of sex discrimination and hostility.   During SGA meetings, members of the Phi Delta Theta fraternity engaged in actions resulting in their removal from Senate, including cursing at fellow senators during meetings and office hours, throwing papers from their desks and screaming at other members of SGA.

51.      At times, as many as six of these senators would gather outside of Andi's office to intimidate her if she closed her door.  Other female SGA members reported being scared as well. This group of senators would often, throughout debate in SGA, make xenophobic, misogynistic, racist and homophobic comments.  Additionally, the group had previously made false Twitter accounts to harass Andi.

52.      At times, these men would enter Andi's office without her consent, and would often scream at her and other female members of the SGA's Executive Board (which for the first time in WKU's history, was predominantly female).  This intimidation of Andi and female SGA members was clearly gender-based.

53.      One of these men distributed an email to the SGA as well as WKU's administration, in reference to the SGA Executive Board, as "jokes of leadership", which it is believed was motivated on the basis of their gender.

54.      It is believed that at no point did the advisor of SGA, Defendant Pride, who is also a member of Phi Delta Theta, attempt to moderate this behavior in any way.  For example, there were instances in August of 2017 of SGA members declining to refer to female members by their proper titles.  From that point forward, things progressed to people coming into Andi's office without her permission and cursing at her.

55.     Instead of remedying the situation, Defendant Pride seemed to chalk it up to a "boys will be boys" mentality and did nothing to step in.

56.     Defendant Pride called Andi into his office multiple times to intimidate her, never once discussing the lewd actions of the men.

57.     Additionally, Defendant Pride made statements that rendered Andi uncomfortable and at times violated Title IX, as at one point he referenced sexual acts between two students and made rude comments based on Andi's gender.

58.     Numerous SGA Executive Board members also expressed feeling uncomfortable about meeting with Pride concerning these issues.

59.     Another example of Defendant Pride's failure to prevent sex discrimination occurred wherein an SGA meeting was in session and a former member of the fraternity groped a female senator.  After Andi discussed the inappropriateness of these actions with Defendant Pride, the senator voluntarily resigned from SGA.

60.     Though Defendant Pride could have attempted to stop this behavior at any time, he openly refused.  He did not even meet with the aforementioned senator after he engaged in this act of sexual assault.  Furthermore, he refused to report this to the Title IX office, disobeying the mandatory reporting procedures of WKU.

61.     Several SGA senators would refer to Andi and other Executive Board members as "bitches" while in the SGA office and derogatory terms such as "bitch" and "cunt" were only directed toward female Executive Board members in the office.  One friend of Andi's was told by her parents to drop out of SGA because she was so scared; another friend started changing her walking routes on campus, so she would not have to run into the various Phi Delta Theta members on campus.

62.     It is clear WKU allowed an environment rife with sex discrimination and hostility to flourish in student government and failed to take reasonable actions to remedy it despite being on notice.  At one point, Andi was so fearful for her life she was not sleeping or eating and could barely make it to her classes.  She was late to both classes and campus activities due to late escort arrivals and the constant change in her walking routes. Andi's living arrangements were also uncomfortable as she often stayed overnight with friends due to her discomfort on campus and in campus parking lots. Due to the anxiety and discomfort and her inability to move freely on campus, Andi could not attend some event meetings and campus events which were integral to her position as student body president and membership on campus committees. On fourteen occasions, Andi's parents drove to Bowling Green from Louisville and allowed her to spend the night with them off campus to promote a safe environment for sleeping and eating. Andi also began experiencing difficulty focusing, nightmares, and sleep deprivation. Andi's severe stress left her barely able to keep down food during this time and she experienced significant weight loss resulting in a change of two dress sizes, some hair loss, brittle nails, and as result of the trauma, she sought counselling off campus. Not only did this trauma result in a lower GPA than previous semesters, Andi was also unable to accomplish many collaborative goals for diversity and inclusion on which she campaigned to serve the student body. Furthermore, the treatment she received discouraged her from continuing involvement within the Student Government Association. She suffered tremendously as a result of the hostile environment and undoubtedly has lost out on educational opportunities.

63.     Andi was late to class due to late police escorts and her grades suffered.  Additionally, she made the decision to forgo running in future SGA elections because of the hostile environment and lost out on the future opportunity to serve the WKU student body.

## <u>COUNTS AGAINST DEFENDANT WESTERN KENTUCKY UNIVERSITY</u>

### <u>COUNT I:</u>

**Violation of Title IX-20 U.S.C. § 1681 (a)**

**(Hostile Educational Environment)**

64.     Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-63 as though fully set forth herein.

65.     Defendant had actual knowledge of Plaintiff's sexual harassment and discrimination rampant in the SGA.

66.  The sexual discrimination, consisting the constant use of words such as "bitch" and "cunt" and blatant disrespect of Andi as well as other female SGA members was so severe, pervasive and objectively offensive that it barred Plaintiff's access to equal educational opportunities and benefits and created a hostile educational environment.

67.     The Plaintiff was subjected to the discrimination because of the Defendant WKU's deliberate indifference to known acts of harassment, sexual violence, discrimination and retaliation, including, without limitation:

> (a)     Defendant's deliberate decision to not provide Plaintiff with reasonable safety measures and accommodations so that she could safely pursue her studies, offering alternatives such as police escorts who would often show up late and result in Andi being late to class;

> (b)     Defendant's failure to prevent the SGA members from their continued sexual harassment of Andi and other female SGA members;

   (c)  Defendant's failure to promptly and equitably put safeguards in place relating to SGA to prevent further sexual harassment to Plaintiff and other female SGA members.

68. Had Defendant not been deliberately indifferent to Plaintiff's harassment, discrimination and retaliation, and instead complied with its own policies and federal law by promptly preventing the SGA members from further sexual harassment and providing reasonable accommodations for Plaintiff's safety in relation to her concerns for her safety, Plaintiff would not have been deprived of equal educational opportunities.

69. Because of Defendant WKU's deliberate indifference, Plaintiff has suffered losses of educational opportunities and benefits along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma, damage to and delays in pursuit of higher education.

   **WHEREFORE,** Plaintiff respectfully demands judgment against Defendant WKU awarding:

   (a)  Damages in amounts to be established at trial, including, without limitation, reimbursement and prepayment for all of Plaintiff's tuition and related expenses; payment of Plaintiff's expenses incurred as a consequence of the sexual assault and harassment; damage for deprivation of equal access to the educational benefits and opportunities provided by WKU; and damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish, loss of past, present and future enjoyment of life;

   (b)  Pre- and post-judgment interest;

   (c)  Costs;

   (d)  Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

   (e)  Such other and further relief as the Court may deem just and proper.

## COUNTS AGAINST DEFENDANTS CABONI, ANDERSON AND PRIDE

## COUNT: II

### Negligence

70.     Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-69 as though fully set forth herein.

71.     Defendants knew of the wrongful conduct of the various SGA members and/or their propensities to act in a reckless, offensive and/or harmful manner, including publishing death threats against Plaintiff on social media sites such as Group Me.  Upon learning of the death threats and continued sex discrimination, Defendants should have immediately begun an investigation as well as put reasonable safeguards in place to protect Plaintiff's interests.

72.  Defendants negligently failed to supervise, investigate and reprimand the SGA members who harassed Plaintiff and other female SGA members and failed to take reasonable steps to ensure Plaintiff could safely continue her education at WKU, free of sex discrimination and threats.

73.     Defendants also failed to ensure that throughout the process Plaintiff was not further traumatized and re-victimized.

74.     As a proximate result of said negligence, Plaintiff incurred the damages described herein.

## COUNT III:

### Negligent Hiring, Training, Retention and Supervision

75.     Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-74 as though fully set forth herein.

76.     Based on the aforementioned facts and circumstances, it is believed Defendant Caboni had supervisory authority over Defendant Pride and Defendant Anderson and other WKU employees and/or agents.

77.     Upon information and belief, Defendant Anderson did not have the requisite credentials and training to perform the job of Title IX Coordinator and that her continued employment by Defendant WKU as Title IX Coordinator, resulted in negligent hiring, training, supervision and retention on its behalf.

78.     Upon information and belief, Defendant Pride did not have the requisite credentials and training to perform the job of SGA advisor and that this was the result of Defendant Caboni's negligent hiring, training, supervision and retention of Defendant Pride.  It is also believed Defendant Pride had a conflict of interest in his role as SGA advisor as well as his involvement with Phi Delta Theta at WKU.

79.     Based upon the aforementioned facts and circumstances, Defendants Caboni, Anderson and Pride and other WKU employees and/or agents failed to comply with the policies and procedures required of Title IX as well as WKU policies and procedures relating to sexual misconduct and harassment.

80.     Furthermore, it is believed Defendant Caboni had supervisory authority over Defendants Anderson and Pride and negligently hired, trained, supervised and retained them due to Defendants Anderson and Pride's failures to comply with the requirements of Title IX and WKU policies and procedures relating to sexual harassment and misconduct.

81.     As a proximate result of said negligence, Plaintiff incurred the damages described herein.

## COUNT IV:

### Negligent Infliction of Emotional Distress

82.     Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-81 as though fully set forth herein.

83.     The acts and omissions of Defendants Caboni, Anderson and Pride, in their respective individual capacities and/or by and through their agents and employees, as well the SGA members who perpetuated the threats and sexually discriminatory conduct, were negligent in that Defendants had a duty to Plaintiff in the circumstances to act with ordinary care toward Plaintiff, they failed in that duty by the manner in which they treated Plaintiff, and their actions were the cause in fact and proximate case of her injuries.

84.     Plaintiff suffered serious and/or severe emotional injury, such that a reasonable person would not be expected to endure due to the mental stress engendered by the circumstances of the case.

85.     The Plaintiff has suffered damages by reason of the above-described conduct in amounts to be proved at trial.

## COUNT V:

### Violation of 42 U.S.C. § 1983

86.     Plaintiff re-alleges and incorporates the allegations set forth above in Paragraphs 1-85 as though fully set forth herein.

87.     Defendants Caboni, Anderson and Pride acted under color of state law.

88.     The mental and emotional abuse as well as harassment and discrimination suffered by Plaintiff at WKU was part of a persistent pattern of abuse in the SGA organization.

89.     Defendants Caboni, Anderson and Pride in their respective individual capacities were deliberately indifferent to this unconstitutional conduct.

90.     The mental and emotional abuse, harassment and discrimination suffered by the Plaintiff at WKU was the result of a custom, and Defendants Caboni, Anderson and Pride in their respective individual capacities failed to act to end this custom.

91.     This custom was the moving force and/or direct causal link that resulted in the constitutional deprivation.  The Plaintiff has suffered damages by reason of the above-described conduct in amounts to be proved at trial.

## COMPENSATORY DAMAGES

92.     Plaintiff incorporates herein by reference each of the foregoing paragraphs as if fully copied and set forth below and further states:

93.     As a direct and proximate result of Defendants' conduct as described above, Plaintiff has incurred or may incur medical and/or counseling expenses, suffered severed, permanent emotional distress, lost educational opportunities, and will continue to incur such expenses and emotional injuries in the future, all to the damages of Plaintiff, which exceeds the jurisdictional minimum of this Court.

94.     As a direct and proximate result of the conduct of the Defendants as set forth herein above, the Plaintiff has incurred and will continue to incur expenses for psychological treatment and care, all to the damage of Plaintiff which exceeds the jurisdictional minimum of this Court.

## PUNITIVE DAMAGES

95.     Plaintiff incorporates herein by reference each of the foregoing paragraphs as if fully copied and set forth below and further states:

96.     Defendants acted with oppression, fraud, malice, reckless, callous and/or flagrant indifference in relation to the Plaintiff.

97.     By acting with oppression, fraud, malice, reckless, callous and/or flagrant indifference to the Plaintiff, Defendants caused irreparable harm to the Plaintiff for which punitive damages are appropriate (in relation to the above-referenced claims where punitive damages are possible).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against all named Defendants, jointly and severally, in an amount to be determined by a jury for:

A.      A monetary judgment against Defendants in an amount that will fully compensate Plaintiff for her injuries and damages;

B.      A judgment of appropriate punitive damages against Defendants in an amount sufficient to punish the Defendants for their willful, wanton, oppressive, fraudulent, malicious, and/or grossly negligent conduct;

C.      Her costs herein expended including reasonable attorneys' fees; and pursuant to CR 3.02, CR 54.04 and 42 U.S.C. § 1988(b);

D.      An award of post-judgment interest in the amount allowed by statute;

E.      Trial by jury of all issues so triable;

F.      Her emotional distress, past, present and future;

G.      Past, present and future medical expenses; and

H.      Her pain and suffering.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory and punitive damages, her costs expended herein, including attorneys' fees, trial by jury on all issues so triable; and any and all further legal and equitable relief to which she may appear entitled.

Date:   08/31/2018                                Respectfully Submitted,


                                                  /s/ Lindsay Anne Cordes
                                                  Tad Thomas
                                                  Lindsay Anne Cordes
                                                  THOMAS LAW OFFICES
                                                  9418 North Commons Blvd. Ste. 200
                                                  Louisville, KY 40059
                                                  PH: (877) 955-7001
                                                  Fax: (502) 791-8352
                                                  Lindsay.cordes@thomaslawoffices.com
                                                  Tad@thomaslawoffices.com
                                                  *Attorneys for Plaintiff, Loandria Dahmer*

## VERIFICATION

Comes LOANDRIA DAHMER, after first being duly sworn, states that she is the Plaintiff herein, that she has read the allegations contained in this Complaint and that they are true.

_Loandria Dahmer_
LOANDRIA DAHMER

_August 31st, 2018_
DATE

COMMONWEALTH OF KENTUCKY

COUNTY OF _Warren_

Sworn and subscribed before me by Loandria Dahmer on this _31_ th day of August, 2018.

_Angela D. Link  ID#525165_
NOTARY PUBLIC, STATE AT LARGE

My Commission Expires: _December 29 2018_