UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:18-CV-00124-JHM-LLK

LOANDRIA DAHMER                                                PLAINTIFF

v.

WESTERN KENTUCKY UNIVERSITY, *et al*.                DEFENDANTS

## OPINION AND ORDER

District Judge Joseph McKinley referred this matter to Magistrate Judge Lanny King for determination of nondispositive matters, pursuant to Title 28 U.S.C. § 636(b)(1)(A). (Docket #7).

Plaintiff Loandria Dahmer filed a Motion to Compel Defendant, Western Kentucky University ("WKU"), to provide responses to her interrogatories and requests for production that were issued on October 17, 2018. (Docket #25). WKU filed a Response in opposition, arguing that the requested information is not within the scope of discovery and that disclosure of the requested information is prohibited by the Family Educational Rights and Privacy Act ("FERPA"). (Docket #29). Dahmer's reply restates her position and addresses each of WKU's arguments. (Docket #31). Fully briefed, this Motion is ripe for adjudication. For the reasons detailed below, Plaintiff's Motion to Compel is GRANTED in part and DENIED in part.

## Background

This case arises out of alleged sex-based discrimination suffered by Plaintiff Dahmer in her role as Student Government Association ("SGA") President at WKU. (Docket #25). Plaintiff filed an action against multiple parties, including Defendants WKU, Timothy Caboni (President of WKU), Andrea Anderson (Title IX Coordinator at WKU) and Charley Pride (SGA Advisor at WKU). (Docket #1). The Complaint alleges that Defendants failed to adequately

1

respond to sex-based discrimination suffered by Plaintiff at the hands of students and staff of WKU. Id. Plaintiff more specifically alleges that Defendant Pride failed to respond to her repeated complaints of sex-based discrimination, and that Defendants WKU, Caboni, and Anderson failed to properly intervene. Id.

On October 17, 2018, Plaintiff served her First Set of Interrogatories and Requests for Production upon Defendant WKU. (Docket #25-1). On December 7, 2018, Plaintiff served an Amended 30.02 Corporate Representative Disclosure Notice upon Defendant WKU, which requested various documents be produced by the corporate representative in the deposition. (Docket #34-3). Defendant WKU objected to producing various items of discovery requested by Plaintiff, asserting broadly that FERPA excluded many items classified as "education records" from disclosure, and that the employment records of Brian Lee and Karl Laves were not within the scope of discovery. (Docket #29-2). Plaintiff filed her Motion to Compel (Docket #25), to which Defendant responded (Docket #29) and Plaintiff replied. (Docket #31).

## Analysis

### *Legal Standard for Discovery*

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." FED. R. CIV. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)). However, the scope of discovery is not unlimited. "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the

burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Id. (quoting FED. R. CIV. P. 26(b)(2)(C)(iii)).  The determination of "the scope of discovery is within the sound discretion of the trial court." Cooper v. Bower, No. 5:15-CV-249-TBR, 2018 WL 663002 at *1 (W.D. Ky. Jan. 29, 2018), *reconsideration denied*, 2018 WL 1456940 (W.D. Ky. Mar. 22, 2018) (quoting Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981)).

**I.      Objections to Interrogatories and Requests for Production Based on FERPA**

Defendant WKU objects to Interrogatories 2, 9, and 19, as well as Requests for Production 12, 13, 19, 27, 29, and 30, primarily based on FERPA. (Docket #29 at 4).  The Court will address each objection in turn.

a. <u>Interrogatory 9: Communications between WKU Employees and Plaintiff Dahmer.</u>

Plaintiff seeks to compel Defendant to produce "as of September 1st, 2017 to the present date, any and all communications that occurred between WKU administrators, faculty, staff, and Plaintiff and any of the allegations raised in her Complaint." (Docket #25-2 at 8).  Defendant WKU has agreed to produce the documents responsive to this Interrogatory upon entry of a protective order. (Docket #29 at 7).  An Agreed Protective Order was entered in this case on January 18, 2019. (Docket #30).  This Agreed Protective Order covers a multitude of subjects, including statements obtained from Plaintiff Dahmer during her Title IX investigation, information and communications relating to and utilized by WKU's Title IX Committee, documents, materials, and communications contained in the WKU Office of Student conduct relating to complaints or allegations by Plaintiff Dahmer and her parents, as well as any communications regarding these complaints between Plaintiff Dahmer and the office, and emails

3

between Plaintiff Dahmer and her parents and Defendants Caboni, Anderson, and Pride, as well as other WKU officials. (Id.).

Good cause exists for the disclosure of this information under the Agreed Protective Order. As discussed in more detail below, student complaints about university employees are not protected from disclosure by FERPA.[1] However, the disclosure of these communications could breach the privacy of other WKU students who have made Title IX complaints, been the subject of investigation during Plaintiff's Title IX investigation, or could generally contain information about other WKU students. Given these issues, good cause exists for entry and disclosure under a protective order under Federal Rule of Civil Procedure 26(c)(1)(G). The Court finds that this information should be disclosed under the Agreed Protective Order.

    b. <u>Interrogatories 2 and 19: Statements Obtained During WKU Title IX Investigation and Other Student's Complaints of Harassment/Gender Based Discrimination.</u>

Plaintiff seeks to compel Defendant to produce all other student complaints of sexual or gender-based discrimination in SGA and any documentation relating to those complaints, as well as any statements obtained by WKU during its Title IX investigations. (Docket #25 at 7, 10). Defendant objected, stating that any Title IX records, which would encompass any records fitting this description kept by Defendant WKU, are "education records" under FERPA, and are thereby shielded from disclosure. In response Plaintiff argues that these records are not those types of records protected by FERPA in this Circuit and that these records are relevant to prove an atmosphere of discrimination, as necessary for her Title IX claim. In the alternative, Plaintiff alleges that Defendant can now produce this information subject to the protective order entered on January 18, 2019. (Docket #30).

---

[1] *See* <u>Klein Ind. School Dist. v. Mattox</u>, 830 F.2d 536, 579 (5th Cir. 1987); <u>Briggs v. Board of Trustees Columbus State Community College</u>, No. 2:08-CV-644, 2009 WL 2047899 (S.D. Ohio July 8, 2009) (discussed in § (I)(e) *infra*).

4

Records of other complaints of sex-based or gender-based discrimination in the WKU SGA are relevant to Plaintiff's Title IX claim. To hold Defendant WKU liable under Title IX, Plaintiff must show Defendant was "deliberately indifferent to sexual harassment, of which they [had] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the victim access to the educational opportunities or benefits provided by the school." Davis v. Monroe Co. Bd. of Educ., 526 U.S. 629, 650 (1999). The Sixth Circuit has further explained that a Plaintiff seeking to prove discrimination based on sex must show that her "educational experience was 'permeated with discriminatory intimidation, ridicule, and insult that is *sufficiently severe or pervasive* [so as] to alter the conditions of the victim's' educational environment." Doe v. Miami University, 882 F.3d 579, 590 (6th Cir. 2018); (*quoting* Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations omitted)). To prove her case, Plaintiff must prove that a pervasive environment of sex-based discrimination existed in the WKU SGA that altered the conditions of her educational environment. These records are relevant to her claims.

FERPA defines "education records" as documents which (i) contain information related directly to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(4)(A)(i-ii). Other district courts have held that "student witness statements are not governed by FERPA." Ellis v. Cleveland Mun. Sch. Dist., 309 F.Supp. 2d 1019, 1022 (N.D. Ohio 2004). Additionally, courts have held that:

[I]ncident reports relating to non-educational matters "are not educational records because, although they may contain names and other personally identifiable information, such records relate in no way whatsoever to the type of records which FERPA expressly protects; i.e., records relating to individual student academic performance, financial aid or scholastic probation which are kept in individual student files."

Cummerlander v. Patriot Preparatory Academy, No. 2:13-CV-0329, 2013 WL 12178140 at *1 (S.D. Ohio Sept. 13, 2013) *quoting* Bauer v. Kincaid, 759 F.Supp. 575, 591 (W.D. Mo. 1991). Further, the Southern District of Ohio has found that the limitations on disclosure imposed by FERPA do not apply to production of documentation relating to student complaints of sexual harassment against a particular employee. Briggs v. Board of Trustees of Columbus State Community College, No. 2:08-CV-644, 2009 WL 2047899 at *5 (S.D. Ohio July 8, 2009); *see also* Klein Ind. Sch. Dist. v. Mattox, 830 F.2d 536, 579 (5th Cir. 1987) ("Excluded from FERPA's protections are records relating to an individual who is employed by an educational agency or institution.").

The records Plaintiff requests are not "educational records" of the type FERPA seeks to protect from disclosure. These records contain no information relating to student academic performance, financial aid, or scholastic probation. These are records of fact and discipline against individuals associated with the institution. It is difficult to believe that the lawmakers who passed FERPA into law sought to prevent disclosure information that could be used to prove claims of gender-based discrimination, nor did they likely believe that their votes would lump these sorts of disciplinary records in the same protective scheme with academic records. In fact, the record indicates that "FERPA's legislative history indicates that it is principally a right to privacy of educational records act." Klein, 830 F.2d at 580, (*quoting* Smith v. Duquesne Univ., 612 F.Supp. 72, 80 (W.D. Pa. 1985) (*applying* Cort v. Ash, *aff'd*, 787 F.2d 583 (3rd Cir. 1986)); *see* 120 Cong. Rec. S39858 (daily ed. Dec. 13, 1974) (joint remarks of Sen. Buckley and Sen. Pell).

For these reasons, Plaintiff's Motion to Compel as to Interrogatories 2 and 19 is GRANTED.

c. Request for Production 12: Any Audio or Video Recordings of Plaintiff Dahmer's Meetings with WKU Officials.

Plaintiff seeks to compel production of "any audio or video recordings of Andi Dahmer at any time she met with any WKU official, including any meetings with Charley Pride and the Title IX Office." (Docket #25-2 at 16). Defendant WKU has agreed to produce the information or items responsive to this Request for Production upon entry of a protective order. (Docket #29 at 10). An Agreed Protective Order has been entered in this case. (Docket #30). This Protective Order contemplates "Audio Recordings of Plaintiff, Andi Dahmer, as part of the Title IX Investigation." (Id. at 3).

Good cause exists for disclosure of these records under the auspices of the Agreed Protective Order. FERPA specifically contemplates the disclosure of student records to a third-party entity with jurisdiction over a Complaint brought by the student who is the subject of those records. 20 U.S.C. § 1232g(b)(2)(B). However, to the extent that these records contain information regarding other students, their information must be protected. Given these issues, good cause exists for entry and disclosure under a protective order under Federal Rule of Civil Procedure 26(c)(1)(G). The Court finds that this information should be disclosed under the Agreed Protective Order.

d. Request for Production 13: Audio or Video Recordings of Disciplinary Meetings on Plaintiff's Complaints.

Plaintiff Dahmer seeks to compel production of "any audio or video recordings of any student disciplinary or University Disciplinary Committee[2] meetings relating to any students who were disciplined as a result of any complaints made by Andi Dahmer." (Docket #25 at 12;

---

[2] In her discovery requests, Plaintiff notes WKU Disciplinary Conference Procedures #6, which state, "A record of the session proceedings will be retained by the University." From https://www.wku.edu/handbook/u-d-c-.php, last accessed October 16, 2018.

Docket #25-2 at 17). Defendant WKU objects to this production, stating that the records contain student information and are protected from disclosure under FERPA. (Docket #29 at 11). The reasoning for Defendant's objections is akin to the reasoning for its objections made to Interrogatories 2 and 19.

FERPA allows the disclosure of the "*final results* of any disciplinary proceeding conducted by such institution against the alleged perpetrator" of the crimes of violence against the victim. 20 U.S.C. § 1232g(b)(6) (emphasis added). The Sixth Circuit has discussed this rule, noting certain express statutory exemptions from privacy protections:

> The FERPA sanctions the release of certain student disciplinary records in several discrete situations through exemption. The Act does not prohibit disclosure "to an alleged victim of any crime of violence ...or a nonforcible sex offense, the final results of any disciplinary proceeding conducted by the institution against the alleged perpetrator ...." 20 U.S.C. § 1232g(b)(6)(A). The public generally may be informed of "the final results of any disciplinary proceeding conducted by [an] institution against a student who is an alleged perpetrator of any crime of violence ... or a nonforcible sex offense, if the institution determines ... that the student committed a violation of the institution's rules or policies with respect to such crime or offense." Id. at § 1232g(b)(6)(B). "[T]he final results of any disciplinary proceeding (i) shall include only the name of the student, the violation committed, and any sanction imposed by the institution on that student; and (ii) may include the name of any other student, such as a victim or witness, only with the written consent of that other student." Id. at § 1232g(b)(6)(C).

Jackson v. Willoughby Eastlake Sch. Dist., No. 1:16CV3100, 2018 WL 1468666 (N.D. Ohio March 23, 2018) (*quoting* United States v. Miami University, 294 F.3d 797, 812 (6th Cir. 2002)). In Miami University, the Sixth Circuit held that the first exemption, which is at issue here, balanced the interests of the alleged perpetrator with those of the alleged victim. The court concluded that the rights of the alleged victim in knowing the results of those proceedings outweighed the privacy interests of the alleged perpetrator. Id. at 813. FERPA creates a balancing test in these situations, with the burden placed upon the party seeking disclosure to "demonstrate a genuine need for the information that outweighs the privacy interests of the

students." Jones v. Espanola Mun. Sch. Dist., No. CV13-741-RB-WPL, 2016 WL 10257481 at *3 (D. N.M. May 13, 2016) (*quoting* Rios v. Read, 73 F.R.D. 589, 599 (E.D. N.Y. 1977).

FERPA does not create an absolute privilege that prevents the disclosure of the records Plaintiff seeks. Plaintiff is entitled to the production of this information, subject to redaction of personal identifying information of those involved and sealing of the documents. Again, this information is relevant to Plaintiff's claims under Title IX, as she will need to prove deliberate indifference by WKU that deprived her of educational opportunities provided by the school. Davis v. Monroe Co. Bd. of Educ., 526 U.S. 629, 650 (1999). While there is a heavy burden on the Plaintiff to demonstrate a need for this information, there seems to be no other way for her to obtain information regarding Defendant WKU's internal responses to the crimes alleged by Plaintiff. Further, the alleged perpetrator(s) interests in privacy can be addressed through redaction.

For the reasons discussed above, Plaintiff's Motion to Compel as to Request for Production 13 is GRANTED.

e. Request for Production 19: Complaints Made Against Defendant Pride.

Plaintiff seeks to compel production of "any complaints made relating to WKU employee Charley Pride and any allegations of sexual harassment, sexually inappropriate comments, or inappropriate behavior on behalf of Mr. Pride, within the last five years." (Docket #25 at 14; Docket #25-2 at 19-20). Defendant objects, arguing that (1) these records are "educational records" under FERPA and (2) production of these records is irrelevant to Plaintiff's Complaint. (Docket #29 at 11).

As discussed above, FERPA defines "education records" as documents which "(i) contain information related directly to a student; and (ii) are maintained by an educational agency or

institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(4)(A)(i-ii). Perhaps more pertinently, the statute explicitly excludes "records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute." 20 U.S.C. §1232g(B)(i). Additionally, Courts have held that records of individual employees of educational institutions are not protected from disclosure by FERPA. Klein Ind. School Dist. v. Mattox, 830 F.2d 536, 579 (5th Cir. 1987); Briggs v. Board of Trustees Columbus State Community College, No. 2:08-CV-644, 2009 WL 2047899 (S.D. Ohio July 8, 2009). Statements by student witnesses about misconduct by teachers are only "tangentially related" to students and are not protected by FERPA. Ellis v. Cleveland Mun. Sch. Dist., 309 F. Supp.2d 1019, 1022 (N.D. Ohio 2004).

Records of complaints against Defendant Pride fall within this exclusion from FERPA protections. Complaints against university employees are not education records protected from disclosure by FERPA. *See* Briggs, 2009 WL 2047899 at *5. Defendant Pride is a university employee, SGA advisor, and a WKU administrator. Student witness statements regarding his conduct are not protected from disclosure under FERPA.

This evidence is also relevant to the claims made by Plaintiff. Plaintiff has brought claims of negligent hiring, training, retention, and supervision in her Amended Complaint against WKU. (Docket #38 at 19). Any claims of sexual harassment against Defendant Pride are relevant to Defendant WKU and Defendant Caboni's supervision of Defendant Pride in his training and conduct in his role as SGA advisor. If prior complaints were brought to the attention of Defendants WKU and Caboni, yet they failed to act in any way or acted inappropriately, this information would be directly relevant to Plaintiff's claims.

For these reasons, Plaintiff's Motion to Compel as to Request for Production 19 is GRANTED.

f. Request for Production 27: Complaints to Title IX, Equal Employment Opportunity, and/or Office of Student Conduct Regarding Sex or Gender-Based Discrimination in SGA.

Plaintiff seeks to compel disclosure of "any complaints or other communications such as emails from other SGA members to the Title IX office, EEO and/or Office of Student Conduct regarding any issues with other SGA members being discriminatory, violent, or exhibiting gender-based sexual harassment from August 2017 to the present date." (Docket #25 at 15; Docket #25-2 at 22). Defendant objects to production, citing FERPA. (Docket #29 at 11).

This situation is akin to that of Request for Production 19. As discussed above, student witness statements are not protected by FERPA. *See* Ellis, 309 F.Supp. at 1022. FERPA is designed to protect records relating to student academic performance, financial aid, and scholastic probation. *See* Cummerlander, 2013 WL 12178140 at *1 (*quoting* Bauer, 309 F.Supp.2d at 1022). These records are not within that category.

For these reasons, Plaintiff's Motion to Compel regarding Request for Production 27 is GRANTED.

g. Request for Production 29: Office of Civil Rights Complaints "OCR" and Settlements Against WKU.

Plaintiff seeks to compel production of "all OCR Complaints against WKU in the last ten years, as well as any documents regarding settlement, resolutions, plan of corrections, etc. with OCR." (Docket #25 at 16; Docket #25-2 at 23). Defendant objects to this production, again on the grounds of relevance and FERPA. (Docket #29 at 12).

Much of the earlier discussion on FERPA protections applies here. These records do not relate to student academic performance, financial aid, or scholastic probation, as protected by

FERPA. Defendant cites no authority for the proposition that these records are specifically excluded from disclosure requirements.[3]

Plaintiff must prove that WKU was deliberately indifferent to an environment of gender-based harassment, which deprived Plaintiff of her educational opportunities. Davis, 526 U.S. at 650. Plaintiff, therefore, must obtain information regarding whether other students made similar claims, including OCR claims, against persons associated with the University to show that WKU knew or had reason to know of a hostile environment.

For these reasons, Plaintiff's Motion to Compel regarding Request for Production 29 is GRANTED.

   h. Request for Production 30: Title IX/Sex Discrimination Complaints and Settlements Relating to WKU.

Plaintiff seeks to compel disclosure of "all Title IX/sex-discrimination complaints and copies of any settlement agreements entered in the last ten years relating to WKU." (Docket #25 at 17; Docket #25-2 at 23). Defendant objects, stating that Plaintiff can do her own search of the court dockets of complaints, as they are public record. (Docket #29 at 12). Additionally, Defendant argues that settlement agreements entered into by WKU are education records that are irrelevant to this matter and are protected from disclosure by FERPA. (Id.).

Generally, "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." FED. R. CIV. P. 33(a)(2). This includes "any matter that may bear upon, or reasonably could lead to other matters that could bear upon, any issue that is likely or may be

---

[3] OCR guidance contemplates public release of certain information regarding OCR complaints. This includes, "name of the recipient; the date your complaint was filed; the type of discrimination included in the complaint; the date the complaint was resolved, dismissed or closed; the basic reasons for OCR's decision; or other related information. Any information OCR releases to the press or general public will not include the complainant's name or the name of the person on whose behalf the complaint was filed." (Docket #25-10 at 5) (*quoting* U.S. Department of Education Office of Civil Rights Complaint Processing Procedures, as summarized in OCR's Case Processing Manual (CPM)).

12

raised in the case." Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 380 (W.D. Ky. 2007)(Discussing FED. R. CIV. P. 26(b)). "When responding to a discovery request, the responding party 'must provide true, explicit, [and] responsive' answers to the requests served." 2815 Grand Realty Corp. v. Goose Creek Energy, Inc., No. 08-186-KKC, 2011 WL 13156876 at *2 (E.D. Ky. May 17, 2011) (*quoting* Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996)). Discovery requests place the initial burden on the party who must respond thereto. Continental Illinois Nat'l Bank & Trust Co. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991). If production is challenged, the party of whom production is requested must show that the burden imposed by answering is unusual, undue, or extraordinary. Id. *See also* United States Sec. and Exchange Comm'n v. Elfindepan, S.A., 206 F.R.D. 574, 576 (M.D. N.C. 2002).

Here, the requested documents meet the requirement of relevancy to Plaintiff's Title IX claims under the Davis test. Further, these court records are within the control of Defendant and are more accessible by Defendant, who has not shown that answering the requests would pose an unusual, undue, or extraordinary burden.

The language of FERPA does not provide Defendant with a reason to object to production of settlement agreements. Again, as discussed above, these records are not education records as contemplated by FERPA. These settlement agreements are not related to student academic performance, financial aid, or scholastic probation, nor are they of a type specifically excluded from production by FERPA. Without any such protection, there is no impediment to their production by Defendants.

Under Kentucky law, settlement agreements by government entities are public records, which are subject to Open Records Act requests. Lexington-Fayette Urban County Government v. Lexington Herald-Leader Co., 941 S.W.2d 469, 471 (Ky. 1997). As WKU is a "public

agency" as defined in the Kentucky Open Records Act, any settlement agreements in suits to which it is a party are matters of public record, which cannot be excluded from disclosure. K.R.S. 164.810 *et seq*.; *See* Cape Publications, Inc. v. University of Louisville Foundation, Inc., 260 S.W.3d 818, 822 (Ky. 2008); (*citing* Courier-Journal & Louisville Times Co. v. Peers, 747 S.W.2d 125, 130 (Ky. 1988)) (disclosure of requested documents was required primarily because the information concerned "the expenditure of public funds.").

For the foregoing reasons, Plaintiff's Motion to Compel as to Request for Production 30 is GRANTED.

## II. Employment Records of Brian Lee and Karl Laves

Plaintiff seeks to compel Defendant WKU to produce the personnel files of Mr. Brian Lee and Dr. Karl Laves, two non-party employees of WKU. Defendant WKU has objected to producing the personnel files, arguing that production would not be relevant or proportional to the needs of the case, and that neither Mr. Lee or Dr. Laves are named parties in this matter. (Docket #29 at 13).

The discovery process has boundaries. "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" Lestienne v. Layne, No. 5-10-CV-200-TBR, 2011 WL 4744912 at *2 (W.D. Ky. October 7, 2011) (*citing* Surles v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007) (*quoting* Marshall v. Westinghouse Elec. Corp., 575 F.2d 588, 592 (5th Cir. 1978)). The party resisting discovery bears a heavy burden to "establish either that the material requested does not fall within the broad scope of relevance under Rule 26(b)(1) or is so marginally relevant that the

potential harm resulting from the production clearly outweighs the presumption in favor of disclosure." Id.

Plaintiff Dahmer seeks disclosure of these personnel files because Mr. Lee and Dr. Laves are "directly relevant to Plaintiff's claims, and while they may not be named as individual defendants in this action, their employee files may lead to the discovery of relevant and pertinent evidence." (Docket #25 at 18). While a student at WKU, Plaintiff Dahmer sought counseling services at the WKU Counseling and Testing Center ("CTC"), where Mr. Lee served as a staff counselor. This counseling continued through Spring 2018, well past the beginning date of the alleged conduct at the core of this case. (Id.) at 19.

During her meetings with Mr. Lee, Dahmer states that she shared many of her concerns with WKU and the SGA situation, particularly as related to WKU's Title IX issues and her lack of confidence in WKU personnel. (Id.) Mr. Lee allegedly shared Ms. Dahmer's concerns, and on February 20, 2018, Mr. Lee purportedly locked Dahmer's file, in an apparent attempt to prevent editing by other WKU administrators. (Id. at 20; Exhibit K, CTC Counseling Notes of Andi Dahmer). On March 20, 2018, Dahmer alleges Mr. Lee advised her to contact the Kentucky Attorney General regarding her concerns, which is charted in a Progress Note to her file. (Exhibit K, at 2). Similar documentations appear in Mr. Lee's handwritten notes. (Id.). During an April 8, 2018 conversation with Mr. Lee, Dahmer states that she expressed continued concerns, and Mr. Lee asked her permission to speak with the Kentucky Attorney General regarding the ongoing Title IX issues. (Id. at 4). Mr. Lee allegedly informed Dahmer that he would be taking a leave of absence from the CTC at this time. (Docket #25 at 21).

Dr. Laves also had access to Dahmer's CTC file and purportedly made edits to it. (Id. at 21-22). Plaintiff states that notes dated April 16, 2018, authored by Dr. Laves noted in her CTC

15

file, read "This note, by Brian Lee, contains a written comment referring to contacting the Atty General on behalf of the client. The notes are on email regarding another client. Need to clarify with Brian, pending current action, if he is pulling students into decisions that are not in their best interest." (Exhibit K, at 5). Mr. Lee was later terminated from the CTC. (Docket #25 at 22). On April 27, 2018, Dr. Laves purportedly placed another note into Dahmer's file, which read "Brian reports having verbal consent to discuss client with others; advised he secure a document, but his description indicates client willingly provided consent. Before document could be obtained Brian was terminated and the client was given the opportunity to work with another therapist." (Exhibit K, at 6).

After Dahmer went public with her story regarding her Title IX claims and WKU's responses, Defendant Caboni established a Committee to review WKU's Title IX program. (Docket #29 at 16). Dr. Laves was named a Co-Chair of this Committee. (Id.). Members of this Committee included students, faculty, and staff, and all were required to sign a Confidentiality Agreement. (Id.).

The Sixth Circuit has previously recognized a protected privacy interest in the disclosure of employment files of public employees, particularly as relates to their personal identifying information. Kallstrom v. City of Columbus, 136 F.3d 1055, 1059 (6th Cir. 1998); Norwood v. F.A.A., 993 F.2d 570, 574 (6th Cir. 1993). In Kallstrom, the Sixth Circuit found that the disclosure of personal information contained in undercover police officers' personnel files violated the privacy protections of the Due Process Protections of the Fourteenth Amendment. Kallstrom, 136 F.3d at 1065. They particularly held that the information released in these personnel files to the criminal defendants requesting it was not a narrowly tailored action designed to serve an important government interest. Id.

16

In contrast, this Court has recognized that certain information contained in personnel records and employment files may be discoverable if it is sufficiently relevant to the litigation. Barrentine v. Home Depot USA, Inc., No. 3:07-CV-315-JHM, 2009 WL 10681145 at *1 (W.D. Ky. Oct. 2, 2009). In Barrentine, the Defendant sought to discover information contained in the employment files of Plaintiff and her son, both of whom had a direct interest in the outcome of the litigation. Id. at *1. Plaintiff, who was the guardian of her mother and executor of an estate, brought a civil suit against the defendants stemming from an accident involving a gasoline-powered portable generator manufactured and sold by the co-defendants. Id. Defendants sought discovery of the employment records of plaintiff and her son, which Plaintiff opposed, arguing that the records were "intensely private.". Id. Defendants argued that plaintiff and her son were two key fact witnesses, who had a direct interest in the outcome of the suit. Id. This Court found that the employment records were discoverable, focusing on the relevance of the knowledge and direct interest in the suit of the plaintiff and her son. Id. at *2.

The case at bar is more like the situation described in Kallstrom. On balance, the privacy interests of Mr. Lee and Dr. Laves in the protection of the information in their personnel files outweighs the need for production. Plaintiff seeks these files to shed light on the inner workings of WKU, particularly as relates to her claims of a rampant environment of gender-based discrimination. However, these files also contain a litany of personal information, the disclosure of which would create severe harm to the privacy interests of those employees. Again, these files may contain relevant information, just as the files in Kallstrom and Barrentine did, but the presence of relevant information alone does not justify the disclosure of sensitive private information, particularly when there are other, more effective ways of uncovering the information sought. If Plaintiff seeks to uncover information about Dr. Laves' qualifications to

17

sit on the Title IX Committee established by WKU, then she may depose him.  The same is true of the information sought regarding Mr. Lee's termination.  Plaintiff may use a more effective instrument in the toolbox of discovery to accomplish her goals.

Further, this case is unlike <u>Barrentine</u> in a key regard, Mr. Lee and Dr. Laves have no personal stake in the outcome of this suit.  The <u>Barrentine</u> plaintiffs had a direct interest in the outcome of the suit, as they stood to inherit from the proceeds.  In this case, Mr. Lee and Dr. Laves have no direct interest in the outcome of the suit.  Without such an interest, there is no counter-weight to the heavy presumption in favor of protection of the intensely private information contained in their personnel files. *See* <u>Marlow v. Chesterfield Cnty. Sch. Bd.</u>, No. 3:10CV18-DWD, 2010 WL 3660770 at *5 (E.D. Va. Sept. 15, 2010).

For these reasons, Plaintiff's motion to compel production of the employment records of Mr. Brian Lee and Dr. Karl Laves is DENIED.

## Conclusion

IT IS HEREBY ORDERED that Plaintiff's Motion to Compel (Docket #25) is GRANTED in part and DENIED in part, as described above.

April 22, 2019

**Lanny King, Magistrate Judge
United States District Court**